# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DEBRA L. ANDERSON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 5:12-1008 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of | § | |
| Social Security, | § | |
| | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION

Debra L. Anderson ("Anderson") seeks review of a partially-adverse decision on her applications for disability-based benefits under the Social Security Act.

## I. Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). Even in this narrows context, Congress directs courts, when reviewing acts of administrative agencies, to take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706; *see also* 28 U.S.C. § 2111 (directing that judgments given upon examination of records be "without regard to errors or defects which do not affect the substantial rights of the parties"); *see also* FED. R. CIV. P. 61 (stating that

"the court must disregard all errors and defects that do not affect any party's substantial rights").

## II. Background

Anderson seeks social security disability insurance benefits commencing April 30, 2009, due to a back injury, anxiety, depression, and post-traumatic stress disorder ("PTSD"). (T. 225).[1] Administrative law judge, Susan Wakshul, ("ALJ Wakshul") found that Anderson became *disabled* as of August 5, 2010, (when her age category changed from a younger individual age 45-49 to an individual closely approaching advanced age), and such disability has continued through the date of her decision—January 13, 2011. Therefore, she *granted* Anderson's applications in part.

ALJ Wakshul *denied* Anderson's applications for the time commencing April 30, 2009, (alleged date of onset of disability) until August 5, 2010, a period of approximately fifteen months. The Appeals Council declined review of that portion of her decision; Anderson then instituted this proceeding.

## III. Commissioner's Decision

ALJ Wakshul found that, at all material times, Anderson has degenerative disc disease, left knee injury, early chronic obstructive pulmonary disease, dyslipidemia, obesity, major depressive disorder, and PTSD. Separately and collectively, these conditions constitute "severe" impairments in that they produce more than minimal functional limitations. (T. 26).

ALJ Wakshul found that Anderson's impairments, singly or in combination, are not so extreme in degree as to be presumptively disabling

---

[1]    "T." followed by a number refers to the page of the administrative record.  (Dkt. No. 9).

under the Commissioner's listing of presumptively disabling impairments.[2] Nonetheless, they significantly reduce Anderson's capacity to perform work-related activities. With respect to *physical* capacity for such activities, Anderson retains ability to function only at the sedentary exertional level with multiple limitations:

> [S]he is unable to climb ladders, ropes, or scaffolds at all or to climb ramps or stairs more than occasionally. The claimant retains the ability to balance, stoop, kneel, crouch, or crawl occasionally.

(T. 30). And, with respect to *mental* capacity, ALJ Wakshul concluded:

> In spite of her mental impairments, she is able to perform simple, routine, repetitive tasks and to tolerate occasional interaction with coworkers, supervisors, and the general public in a non-production-pace, "low stress" work environment, i.e., the work would not require the claimant to make decisions or to use her judgment more than occasionally, or to be exposed to more than occasional changes in the work setting.

(*Id.*).

Relying on expert vocational testimony, ALJ Wakshul found that (a) Anderson's reduced residual functional capacity prevents her from performing her past relevant work as a cashier, home health aide, or food sales clerk (T. 33), but (b) prior to August 5, 2010, Anderson could still perform alternative, available work as an "inspector," "polisher," or "laminator." (T. 33-34). Therefore, ALJ Wakshul determined that a finding of "not disabled" was

---

[2]    The Commissioner publishes a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected.  20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  Listed impairments are presumptively disabling.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

appropriate under the framework of Medical-Vocational Rule 201.21.[3] (T. 34). Thus, Anderson's claim prior to August 5, 2010, was *denied.* (T. 34-35).

When Anderson's age category changed to an "individual closely approaching advanced age" on August 5, 2010, ALJ Wakshul determined that a finding of "disabled" is reached by direct application of Medical-Vocational Rule 201.14. (T. 34). Therefore, her applications partially were *granted* commencing as of that date.[4]

## IV. Points of Alleged Error

Disagreeing with that portion of ALJ Wakshul's decision adverse to her applications, Anderson's brief proffers four errors:

1.   the ALJ failed to find that Plaintiff met Listing 12.04;

2.   the ALJ's residual functional capacity finding is unsupported by substantial evidence;

3.   the ALJ's credibility determination is unsupported by substantial evidence; and

4.   the ALJ's Step 5 determination is unsupported by substantial evidence.

(Dkt. No. 12, pp. 3, 9-24). Under this district's practice, the parties marshal their arguments on these issues through competing briefs.[5]

---

[3]     *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. The Medical-Vocational Guidelines are a matrix of general findings – established by rule – as to whether work exists in the national economy that a person can perform. They "take into account a claimant's residual functional capacity, as well as her age, education, and work experience." *Calabrese v. Astrue*, 358 Fed. App'x 274, 276 & n. 1 (2d Cir. 2009) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)).

[4]     ALJ Wakshul's complete findings and conclusions appear on ten pages, T. 26-35, of the administrative transcript contained in the record before the court. (Dkt. No. 9).

[5]     *See* General Order #18 dated September 23, 2003 (superseding January 24, 2002 and September 19, 2001 general orders). (Dkt. No. 3).

# V. Introductory Considerations

## A.    *Sequential Evaluation*

Administrative law judges utilize a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)).[6] Whether claimants are presently engaged in substantial gainful activity is examined at Step 1. Administrative law judges determine whether claimants have severe impairments at Step 2. Severe impairments are compared to an official Listing of presumptively disabling impairments at Step 3. When sequential evaluations reach Step 4, adjudicators determine whether claimants can perform their past relevant work. Finally, when adjudicators proceed to Step 5, the inquiry centers on whether claimants can still perform alternative and available work.

## B.    *Residual Functional Capacity*

Both Step 4 and Step 5 findings are made in context of a predicate residual functional capacity finding. "Residual functional capacity" refers to what persons can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain. *See Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). Administrative law judges thus decide whether applicants, notwithstanding their impairments, have physical and mental abilities to perform activities generally required by competitive, remunerative work on a regular and continuing basis. Descriptions and

---

[6]    A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

observations of limitations from all sources, including claimants and lay persons are admissible and relevant on this issue.[7]

## C.  *Determining Credibility of Medical Evidence*

The Commissioner categorizes medical evidence by "sources" described as "treating," "acceptable" and "other."  Administrative law judges are required to give controlling weight to opinions of treating sources[8] regarding the nature and severity of impairments, provided they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the case record.[9]

"Acceptable" medical sources are licensed  physicians (medical or osteopathic doctors), psychologists, optometrists, podiatrists, and speech-language pathologists.[10]  An acceptable medical source opinion or diagnosis is necessary to establish existence of a medically determinable impairment.[11]

---

[7]  *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

[8]  *See* 20 C.F.R. §§ 404.1502, 416.902 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.").

[9]  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

[10]  20 C.F.R. §§ 404.1513(a), 416.913(a). "Acceptable medical source refers to one of the sources described in § 404.1513(a) who provides evidence about your impairments. It includes treating sources, nontreating sources, and nonexamining sources."  20 C.F.R. §§ 404.1502, 416.902.

[11]  SSR 06-03p, TITLES II AND XVI: CONSIDERING OPINIONS AND OTHER EVIDENCE FROM SOURCES WHO ARE NOT "ACCEPTABLE MEDICAL SOURCES" IN DISABILITY CLAIMS, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006).

"Other" sources are ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists.[12] Evidence from these sources "is evaluated on key issues such as impairment severity and functional effects."[13] "Other" source opinions, even when based on treatment and special knowledge of an individual, never enjoy controlling weight presumptions.[14] Nor can "other" source opinion be relied upon to establish existence of a medically determinable impairment.[15]

Evidence from *all three sources*, however, can be considered when determining *severity of impairments and how they affect individuals' ability to function*. And, in *each* instance (except when controlling weight is given to a treating source's opinion), the degree of weight to be given such evidence is determined by applying certain generic factors prescribed by regulation: (1) length of treatment relationship and frequency of examination; (2) nature and extent of treatment relationship; (3) evidence supporting the opinion; (4) how consistent opinion is with record as a whole; (5) specialization in contrast to condition being treated; and (6) other significant factors.[16]

---

[12] 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, 2006 WL 2329939, at *2.

[13] *Id.*, at *2-3.

[14] *Id.; see also* SSR 96-2p, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at *1 (SSA July 2, 1996) (explaining controlling-weight factors).

[15] SSR 06-03p, 2006 WL 2329939, at *2

[16] *See* 20 C.F.R. §§ 404.1527(c), 416.927(c)(Aug. 24. 2012) ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion"). This Regulation recently (March and August 2012) has been amended. Prior to the amendment on March 26, 2012, these two subsections were each numbered "(d)."

*See also,* SSR 06-03p, 2006 WL 2329939, at *4 ("Although the factors in 20 C.F.R. 404.1527[c] and 416.927[c] explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'" ).

# VI. Medical Evidence

Anderson's appeal focuses on medical evidence from two sources: a treating nurse practitioner, Diane Plumadore, N.P. ("N.P. Plumadore"), and a consultative internal medicine examiner, Roberto Rivera, M.D. (Dr. Rivera). Under the Commissioner's classifications, Dr. Rivera is considered an "acceptable source," and N.P. Plumadore is an "other source."

## A. N.P. Plumadore

Through St. Joseph's Hospital Outpatient Mental Health Clinic, N.P. Plumadore treated Anderson on a regular basis from September 9, 2009, to October 26, 2010. (T. 326, 343-51, 397, 405-11). On December 10, 2010, N.P. Plumadore completed a "Medical Source Statement."[17] (T. 392-94). This statement also was signed by a licensed mental health counselor James Amodio, LMHC. (T. 394). N.P. Plumadore opined that Anderson has *no useful ability to function* regarding:

- maintaining attention for two hour segments;
- working in coordination with or proximity to others without being unduly distracted;
- completing a normal workday and work week without interruptions from psychologically based symptoms;
- accepting instructions and responding appropriately to criticism from supervisors;
- dealing with normal work stress; and
- traveling in unfamiliar places.

---

[17] N.P. Plumadore's "Medical Source Statement" does not appear to be an official social security form; its origin is unspecified. In multiple pages, N.P. Plumadore entered information describing (a) Anderson's signs and symptoms, (b) Anderson's mental abilities and aptitudes needed to do unskilled work generally, and (c) Anderson's mental abilities and aptitudes needed to do particular types of jobs. In most instances, her entries were check-the-box in nature, but she also provided a handwritten description of Anderson's limitations.

(T. 393-94).  N.P. Plumadore further opined that Anderson is *unable to meet competitive standards* regarding:

- remembering work-like procedures;
- sustaining an ordinary routine without special supervision;
- making simple work-related decisions;
- performing at a consistent pace without an unreasonable number and length of rest periods;
- responding appropriately to changes in a routine work setting; and
- interacting appropriately with the general public.

(*Id*.).  Additionally, N.P. Plumadore found Anderson was *seriously limited, but not precluded*, regarding:

- understanding and remembering very short and simple instructions; carrying out very short and simple instructions;
- maintaining regular attendance and being punctual within customary, usually strict tolerances;
- asking simple questions or requesting assistance;
- getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes;
- being aware of normal hazards and taking appropriate precautions; and
- using public transportation.

(*Id*.).  N.P. Plumadore opined that Anderson would be off task more than 20% of an 8-hour workday and that due to her impairments or treatment would be absent from work more than 4 days per month.  (T. 394).  Finally, beside "prognosis," N.P. Plumadore handwrote "good." (T. 392).

## B.    Dr. Rivera

On January 13, 2010, Dr. Rivera conducted a full, one-time consultative internal medicine examination of Anderson, objective results of which are summarized in the note below.[18]  (T. 352-57).  Dr. Rivera ultimately diagnosed

---

[18]      Anderson appeared to be in no acute distress.  (T. 354).  Her gait was slow and waddling.  She was completely unable to walk on heels or toes without difficulty.  (*Id*.).  Squat was only one-third full secondary to LBP.
(continued...)

Anderson with lower back pain by history, left knee injury by history, PTSD/bipolar disorder by history, and obesity. (T. 356). With respect to *functional effects* of these symptoms, Dr. Rivera opined that Anderson has *no* limitations to sitting, *mild* limitations to standing, *moderate* limitations to walking, and *marked* limitations to lifting, carrying, pushing, and pulling. (T. 356). Her prognosis was noted as stable. (*Id.*).

## VII. Weighting of Medical Evidence

ALJ Wakshul did not give *any* weight to N.P. Plumadore's opinions and assessments contained in her "Medical Source Statement." (T. 32). ALJ Wakshul reasoned as follows:

> There is no objective basis, quite simply, for the belief that an individual with "mild" symptoms and a "good" prognosis should be expected to be "unable to meet competitive standards" in a number or areas or to remain off task for at least twenty percent of an eight-hour workday. I add that the claimant's hearing testimony, to the effect that she continues to cook regularly, to share household chores with her boyfriend, to engage in hobbies, and to be able to tolerate a large family gathering over the Christmas holiday, does not appear consistent with an inability to complete a restricted range of unskilled work on a full-time basis.

(T. 32).

---

[18](...continued)
(*Id.*). She needed help getting on and off of the examination table due to obesity. (*Id.*). She was able to rise from chair without difficulty. (*Id.*). She used no assistive devices. (*Id.*). She demonstrated some reduced range of motion in her lumbar spine examination: flexion, extension 45 degrees; lateral flexion left and right 20 degrees; and lumbosacral rotation left and right. (T. 355). A straight leg test was only to 40 degrees bilaterally. (T.355). Her left knee was only able to perform flexion, extension only to 90 degrees. (*Id.*). She had full range of motion of right knee and ankles, with edema. (*Id.*). Her strength was 5/5 in upper and lower extremities. (*Id*). No trigger points were evident. (*Id.*). Her hand and finger dexterity were intact. (*Id.*). Her mental status screen was normal. (T. 355-56).

ALJ Wakshul does not denote what weight he afforded to Dr. Rivera's opinions. Rather, ALJ Wakshul merely states:

> [e]ven though Dr. Rivera's medical source statement *did not give a precise estimate with regard to the claimant's ability to sit, stand, or carry items over the course of an eight-hour work day*, I find that there is no discrepancy between the reference to "[m]arked limitations to lifting, carrying, pushing, and pulling" and "[n]o limitations to sitting" and an ability to perform a restricted range of sedentary work at all times after the alleged onset date, especially in light of the claimant's asserted ability to lift and carry a gallon of milk and to carry out a wide range of household chores at the present time, the failure to seek medical care from Dr. Amman between February and August 2010, the silence with respect to musculoskeletal deficits in the recent treatment notes, and the ability to manages her symptoms with the use of Tylenol, ice packs, heat packs, an inhaler, and an avoidance of tobacco.

(T. 32-33) (emphasis added).

## VIII. Discussion

Anderson's principal argument – affecting at least three of her four points on appeal – is that ALJ Wakshul erred when rejecting N.P. Plumadore's opinions and assessments for lack of credibility. Anderson argues that ALJ Wakshul ignored credibility factors applicable under the governing regulation and interpretive ruling, and further argues that had those factors faithfully been applied, N.P. Plumadore's medical evidence would have been given great weight. Had this occurred, Anderson argues that she would have been found disabled at Step 3, or her residual functional capacity would have been much less at Step 4, and, consequently, the hypothetical question posed to the vocational expert witness at Step 5 would be defective due to incompleteness.

Anderson's second argument – but not alternative – is that ALJ Wakshul erred in relying on medical evidence from Dr. Rivera. Anderson advances a two-

pronged challenge to this evidence. Anderson initially argues that reliance on Dr. Rivera's evidence is legal error because ALJ Wakshul did not state the specific amount of weight she afforded Dr. Rivera's opinions. Anderson next argues that, in any event, Dr. Rivera's evidence was too vague to determine residual functional capacity at a sedentary exertional level, and, consequently, does not constitute substantial evidence supporting that determination.

A.    *Credibility Choice Regarding N.P. Plumadore Evidence*

Anderson maintains that ALJ Wakshul failed to follow 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) and SSR 06-03 which govern evaluations of medical evidence from "other sources," such as N.P. Plumadore. Indeed, careful and independent examination of ALJ Wakshul's decision fails to disclose that she applied the six item-by-item credibility factors in any discernible way. Rather, she dismissed N.P. Plumadore's opinions out of hand on the supposition that it is incredulous to think that an individual with mild symptoms and a good prognosis would be as impaired as opined by N.P. Plumadore.

While this has a measure of initial appeal, it does not withstand probing examination. First, N.P. Plumadore did not evaluate Anderson's symptoms as "mild." Thus, her opinions are not internally inconsistent. Second, it is a *non sequitur* to infer that a person whose ultimate prognosis is "good," is not presently disabled absent a plausible and articulated  rationale for concluding that Anderson is expected to experience restoration of function within 12 months of disability onset.[19] Under ALJ Wakshul's own findings, Anderson's impairments are so severe that by mere passage of a short period of time, she became disabled. Thus, this stated reason falls under its own weight.

---

[19]    *See* SSR 82-52, TITLES II AND XVI: DURATION OF THE IMPAIRMENT, 1982 WL 31376, at *3 (SSA 1982).

ALJ Wakshul also rejected N.P. Plumadore's opinions based on Anderson's testimony regarding her daily activities. Although *daily activities* are not among the six regulatory factors usually considered when evaluating *medical evidence*, such evidence is not entirely irrelevant. In this regard, however, the pertinent inquiry is not whether Anderson can sit for *some* period of time or perform daily activities on a *limited* basis notwithstanding her mental impairment, but whether N.P. Plumadore improperly assessed mental limitations as they likely would affect *an 8–hour workday*. Nothing in Anderson's testimony concerning her activities of daily living indicates they are performed on a regular or continuing basis akin to a workday, and thus they do not contradict N.P. Plumadore's opinion. (T. 32). Again, the reason proffered by ALJ Wakshul is implausible.[20]

More importantly, however, is an ineluctable fact that had ALJ Wakshul applied the regulatory factors that the Commissioner deems important, she might well have given N.P. Plumadore's opinions some, if not great credence. One such factor is length of treatment relationship and frequency of examination. Another is nature and extent of treatment relationship. Application of these factors would point toward crediting N.P. Plumadore's opinions as she treated Anderson for the greatest length of time, examined her the most frequently, and the nature of the treatment relationship was purely professional instead of driven forensically.

---

[20] Anderson correctly argues that "it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, 'as people should not be penalized for enduring the pain of their disability in order to care for themselves.' " *Stoesser v. Commissioner of Soc. Sec.*, No. 08-CV-643 (GLS/VEB), 2011 WL 381949 , at *7 (N.D.N.Y. Jan. 19, 2011) (quoting *Woodford v. Apfel*, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000)); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act.").

Second, N.P. Plumadore's opinions are consistent with at least some of the other medical evidence of record. Anderson's brief points to numerous examples of other physicians and registered nurses similarly reporting Anderson's moods as despondent, tearful, sad, depressed, behavior slow, and poor concentration. (T. 315-16, 322, 327-28). Anderson also identifies similar physician diagnoses of major depressive disorder, PTSD, and/or bipolar disorder. (T. 322, 332, 337, 356, 361-62).

Third, it is by no means a certainty that N.P. Plumadore's degree of specialization in contrast to the condition being treated would weigh against her opinions. Although she fits in an "other source" category, it appears her practice is confined to patients at a mental health clinic. Based on her concentrated experience in that field, this specialization factor might well have been weighed at least neutrally.

Finally, much of Anderson's own testimony supports N.P. Plumadore's opinion. She has panic attacks when around too many people, including on the bus, and has problems concentrating. (T. 60, 70). She has a hard time motivating herself to do anything. (T. 64). She has crying spells daily. (T. 69). She has flashbacks with her PTSD two or three times per week, which make it virtually impossible for her to go outside. (T. 69).

Courts conducting judicial review in social security cases do not require perfect opinions or rigid, mechanical, formulaic applications of governing legal

principles.[21] Nor do they assume that an administrative law judge's mere failure to explicitly *mention* a particular item of evidence or applicable legal rule equates to failure to *consider* the evidence or ignorance of governing law. Rather, courts cipher decisions in the whole to determine when they reflect analytical and substantive equivalence. Here, however, such benevolent examination fails to turn up any analytical or substantive equivalence. And, as demonstrated in immediately preceding paragraphs, the court cannot conclude that careful application of the six regulatory factors would have been superfluous.

In sum, ALJ Wakshul failed to properly evaluate N.P. Plumadore's opinion evidence under applicable regulations and rules.[22]

---

[21] *See Atwater v. Astrue*, 512 Fed. App'x 67, 70 (2d Cir. 2013) (summary order) ("no such slavish recitation of each and every factor [20 C.F.R. § 404.1527(c)][is required] where the ALJ's reasoning and adherence to the regulation are clear"); *see also Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004) (affirming ALJ opinion which did "not expressly acknowledge the treating physician rule," but where "the substance of the treating physician rule was not traversed"); *see* SSR 06-03p, 2006 WL 2329939, at *6 (stating that the ALJ should explain the weight given to "other source" opinions, "or otherwise ensure that the . . . decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case").

[22] The undersigned does not suggest or infer that ALJ Wakshul necessarily would have given more weight to N.P. Plumadore's medical opinions under a proper assessment, but only that such assessment inevitably would have resulted in considering evidence that might result in weighing some factors in favor of credibility. The record may well contain opposing evidence that outweighs favorable evidence mentioned in the text, above. A reviewing court, however, does not have the prerogative to weigh such evidence *de novo*; only the Commissioner through an administrative law judge can do so in the first instance.

*B.*     *Weighting and Reliance on Dr. Rivera's Medical Evidence*

1.     Weighting

ALJ Wakshul clearly relied on opinions of consultative internal medicine examiner, Dr. Rivera.   (T. 32-33).   However, ALJ Wakshul failed to state what specific weight she afforded to Dr. Rivera's opinions.   Anderson argues that this technical omission amounts to a *per se* legal error.

In *English v. Commissioner of Soc. Sec.*, No. 6:05-CV-905 (LEK/GJD), 2008 U.S. Dist. Lexis 7762, at *14 (N.D.N.Y. Jan. 24, 2008) (Kahn, J.), an administrative law judge rejected treating physician opinions with no more explanation than a terse statement that such opinions were "inconsistent with their treatment records, which indicate the claimant was disabled from his *former employment*, not *all work*." *English*, 2008 U.S. Dist. Lexis 7762, at *14 (emphasis added).   The court held:

> "[T]he ALJ failed to state what *specific weight* he assigned to [treating physicians'] opinions, *which was error*."

*Id.* (emphasis added).   In that court's view, such language was inadequate to make clear to subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and reasons therefor. The court based its holding on its interpretation of a regulation, 20 C.F.R. § 404.1527(d)(2), and an interpretive ruling, Social Security Ruling 96-2p.[23]

Here, ALJ Wakshul does not specify *any weight* given to Dr. Rivera's opinion.   Thus, there is an apparent *English* error embedded in ALJ Wakshul's decision.   ALJ Wakshul's weighting language, however, *is* adequate to make clear to subsequent reviewers what weight she gave to Dr. Rivera's opinions and

---

[23]     SSR 96-2p, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188 (SSA July 2, 1996).

reasons therefor. She equated Dr. Rivera's findings of marked limitations in lifting, carrying, pushing and pulling, but no limitations to sitting to a residual functional capacity for a restricted range of sedentary work. As such, an *English* error, if any, is harmless.

2.  Reliance

Whether Dr. Rivera's evidence constitutes substantial evidence supporting ALJ Wakshul's residual functional capacity finding is an entirely different question. With respect to *physical* residual functional capacity, administrative law judges assess a claimant's exertional and nonexertional limitations in performing a certain category of work activity on a regular and continuing basis. 20 C.F.R. §§ 404.1567, 416.967; 20 C.F.R. §§ 404.1569a, 416.969a.[24] To do this, they must determine *strength limitations* which include ability to sit, stand, walk, lift, carry, push and pull,[25] and *nonexertional limitations* that produce difficulty performing manipulative or postural functions of work such as reaching, handling, stooping, climbing, crawling, or crouching.[26]

---

[24]    The Commissioner defines various exertional levels of work in terms of requirements to perform such physical activities. *See* 20 C.F.R. 404.1567, 416.967 ("sedentary," "light," "medium," "heavy," and "very heavy" work). For example, sedentary work is defined as:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

[25]    20 C.F.R. §§ 404.1569a(a), 416.969a(a); *see also* SSR 96-8p, TITLE II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 1996 WL 374184, at *5 (SSA July 2, 1996)

[26]    20 C.F.R. §§ 404.1569a(c), 416.969a(c); *see also* SSR 96-8p, 1996 WL 374184, at *6.

ALJ Wakshul acknowledged that Dr. Rivera's opinions do not express precise estimates with regard to Anderson's ability to sit, stand or carry items over the course of an eight-hour work day. Rather, Dr. Rivera used indeterminate descriptors such as "mild," "moderate" and "marked" when expressing Anderson's limitations with respect to physical activities of standing, walking, lifting, carrying, pushing and pulling.

Anderson contends that Dr. Rivera's opinions are so vague as to preclude an inference that Anderson can perform exertional requirements of sedentary work. (Dkt. No. 12, pp. 18-20). Anderson cites a Second Circuit decision, *Curry v. Apfel,*[27] and district court cases in accord therewith for the proposition that a consultative examiner's use of the terms "moderate" and "mild," without additional information, are so vague as to be an insufficient basis for an inference that an individual can perform requirements of exertional levels of work. (Dkt. No. 12, pp. 18-19).

This assertion undoubtedly is correct in the context of complex medical scenarios. And, in all cases, use of imprecise and nebulous terms regarding functional limitations raises a red flag. In such circumstances, administrative law judges following best practices might well be advised to recontact such examiners routinely for clarification.

On the other hand, use of terms like "mild" and "moderate" has been held to pass substantial evidence muster when medical evidence shows relatively little physical impairment. *See Waldau v. Astrue*, No. 5:11-cv-925, 2012 WL 6681262, at *4 (N.D.N.Y. Dec. 21, 2003) (Sharpe, J.). In such circumstances, administrative law judges permissibly may render common-sense judgments

---

[27]    209 F.3d 117, 123 (2d Cir. 2000)

about functional capacity even without physicians' specific functional assessments. *Id.*

The case at bar does not involve benign facts lending themselves to easy and obvious commonsense judgments. Anderson has severe physical and mental impairments. Under ALJ Wakshul's findings, the only thing separating her from being "disabled" and "not disabled" was an intervening birthday that occurred soon after the date she alleges she became disabled. When the line between entitlement to benefits and denial of benefits is that fine, a crucial residual functional capacity determination cannot be based on vague findings. *See Curry*, 200 F.3d at 123. Without additional information, ALJ Wakshul properly could not infer from Dr. Rivera's evidence that Anderson can perform even a restricted range of sedentary activities. As such, the residual functional capacity finding is not supported by substantial evidence.

## IX. Summary and Conclusion

ALJ Wakshul erred in rejecting N.P. Plumadore's opinions (regarding severity of Anderson's impairments and how they affect her ability to function) without substantially complying with the Commissioner's prescribed protocol for determining credibility of "other source" opinion. This error is not harmless, as ALJ Wakshul might reasonably have made different findings at Steps 3, 4 and 5 of the sequential evaluation, and come to a different conclusion had she applied the regulatory weighting factors and given great weight, or even some weight, to N.P. Plumadore's opinions.

ALJ Wakshul further erred in relying on vague medical opinion from a consulting examiner when assessing Anderson's residual functional capacity. Accordingly, the residual functional capacity determination is not supported by

substantial evidence. A pivotal finding unsupported by substantial evidence is not a harmless error.[28]

These errors, therefore, warrant remand. The court need not address remaining points on the merits because the outcome of this case will not change.

## X. Recommendation

The Commissioner's decision denying disability benefits should be REVERSED and the case REMANDED pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings concerning the period at issue, *i.e.*, the alleged onset date of disability, April 30, 2009, to August 4, 2010. Upon remand, the Commissioner should address the errors identified above, and conduct such other proceedings as the Commissioner determines appropriate.

## XI. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir.

---

[28] Adverse administrative decisions unsupported by substantial evidence clearly affect substantial rights. The Constitution condemns arbitrary and capricious exercise of government power, and, for over a century, American jurisprudence has recognized that administrative facts not fairly supported by evidence are arbitrary and baseless. *Interstate Commerce Comm'n v. Louisville & Nashville R.R. Co.*, 227 U.S. 88, 91 (1913); *see also Rice v. Shalala*, No. 93-1305, 1 F.3d 1234 (Table), 1993 WL 309631, at *5 n.6 (4th Cir. Aug. 16, 1993) (acknowledging that substantive due process rights are implicated by argument suggesting that Commissioner's decision was not supported by substantial evidence). Both the Administrative Procedure Act and the Social Security Act give proponents of administrative actions statutory rights to orders supported by substantial evidence. *See* 5 U.S.C. § 706(d); 42 U.S.C. § 405(g).

1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the ___8___ day of _____October_____ 2013.

Earl S. Hines
United States Magistrate Judge